In re:

REBECCA M. WEINERT,

      Debtor.
_____/

Case No. 11-69840
Chapter 7
Hon. Walter Shapero

# OPINION GRANTING TRUSTEE'S MOTION TO DISMISS UNDER 11 U.S.C. § 707(b)(2) AND (b)(3)

## Introduction

The United States Trustee filed a motion to dismiss the Debtor's Chapter 7 bankruptcy case claiming that the presumption of abuse arises. The Court grants the Trustee's motion for dismissal based on a finding of abuse pursuant to 11 U.S.C. § 707(b)(2) and (b)(3), based on a finding that a Personal Savings Plan loan repayment is not a proper monthly expense deduction under the means test.

## Statement of Facts and Issues Presented

Rebecca M. Weinert ("Debtor") filed a Chapter 7 voluntary petition on November 18, 2011. Upon filling, Debtor filled out a Form B22A means test. Debtor claimed a Personal Savings Plan (PSP) loan repayment as an "involuntary" expense deduction. The United States Trustee filed a motion to dismiss the case under 11 U.S.C. § 707(b)(2) and (b)(3) stating that (1) the deduction is improper and that the presumption of abuse arises if the deduction is eliminated, (2) if the presumption of abuse does arise, debtor cannot rebut it, and (3) if it does arise or is

1

rebutted, the totality of the circumstances requires dismissal. The Debtor claims that the presumption of abuse does not arise because the deduction is proper, and further argues that a retirement loan repayment should be recognized as a special circumstance that can rebut the presumption of abuse.

A case can be dismissed for abuse under § 707(b)(1). Abuse is presumed by application of the formula in § 707(b)(2)(A)(i), part of which takes into account a debtor's "currently monthly income" and "monthly expenses." Incident to that determination, Debtors are required to file the means test form, which shows current income and expenses and the calculations that determine whether or not the presumption arises. "Monthly expenses" are defined in § 707(b)(2)(A)(i)(I), (II), (III), (IV), and (V). However, "current monthly income" is not itself defined in § 707(b)(2), but the means test form utilizes income as set forth in Schedule I for these purposes. If a presumption of abuse arises it may only be rebutted by "demonstrating special circumstances," such as are defined and determined under § 707(b)(2)(B)(i), (ii), (iii), and (iv). If a presumption of abuse does not arise or is rebutted, the case may still be dismissed for abuse. In determining abuse in that circumstance, the Court considers (1) whether the case was filed in bad faith and (2) whether the "totality of the circumstances" of the debtor's financial condition demonstrates abuse.

Debtor's obligations are primarily consumer debts. Debtor has scheduled nonpriority unsecured debt of $54,184.25. (Trustee's Ex. 7). Debtor has been employed by General Motors as an electrician for over 13 years (Trustee's Ex. 1) and has listed $6,691.58 as net monthly income under Schedule I.[1] (Trustee's Ex. 7). Debtor has listed monthly expenses of $4,918.14

---

[1] The United States Trustee and Debtor both list $5,034.01 as Debtor's Schedule I monthly income in their pleadings. The Court will use the figure listed on the amended means test, $6,691.58, as it is the more recent figure.

under Schedule J. (Trustee's Ex. 7). Subtracting the amount of Schedule J from Schedule I, under § 707(b)(2), Debtor has monthly disposable income of $159.09. (Trustee's Ex. 7).

The monthly PSP loan repayment listed in Schedule J is $409.14. Debtor has taken out five loans from the PSP. (Trustee's Ex. 4). The first loan was obtained in January 2007 in the amount of $6,686. The second loan was obtained in January 2008 in the amount of $3,181. The third loan was taken out on June 2009 in the amount of $1,662. The fourth loan was taken out on February 2010 in the amount of $2,700. The last loan was taken out on January 2011 in the amount of $5,676. (Trustee's Ex. 3). The balance owed on the loans is $7,135.41. (Trustee's Ex. 5). As of December 30, 2011, Debtor had a current balance of $14,953.54 in the PSP account. (Trustee's Ex. 5).

The initial issue is whether PSP loan repayment is a proper expense deduction under the "Other Necessary Expenses" provision of § 707(b)(2)(A)(ii)(I). If the PSP loan repayment is an "involuntary" expense under the facts, the presumption of abuse would not arise, whereas, if it is discretionary, the presumption of abuse would arise and the case is dismissible unless the presumption is rebutted by a showing of special circumstances, or, alternatively the totality of the circumstances warrants otherwise.

## Discussion

### I. Presumption of Abuse Under § 707(b)(2)

The parties agree that the arising of the presumption in this case depends solely on whether or not the PSP loan repayment amount is properly considered as one of the "other necessary expenses" referred to in the statute. Whether the subject expense is properly considered as one of the "other necessary expenses" in turn depends on whether it is considered

3

to be an "involuntary" expense within the meaning of that term as used in the applicable IRS National and Local Standards, which are incorporated into the statute.

The means test form does not contain a specific category of expense relating to a Personal Savings Plan. Debtor in this case placed it in the means test line 26 category of "Other Necessary Expenses," which encompasses or includes expenses that are "involuntary" and excludes those that are "discretionary." What are considered or defined as "involuntary" are expenses that are "a requirement of the job: i.e. union dues, uniforms, work shoes." (Internal Revenue Service Manual- IRM Part 5, Section 15.1.10- relating to what are considered "Other Necessary Expenses").

### A. The Personal Savings Plan

For the purposes of this analysis, the Court likens a Personal Savings Plan to a 401(k) employee retirement plan. In their arguments, both the United States Trustee and the Debtor described the PSP as a type of 401(k) account. Further, both refer to cases in support of their arguments that focus on the law governing 401(k) retirement plans and not specifically on Personal Savings Plans. The plans are similar in that they both offer employee retirement benefits through the employer and they both offer an option for employees to voluntarily fund the plans by a wage deduction. Participation in this type of payment and repayment system is at the employee's discretion. A personal savings plan, like a 401(k) plan, allows employees to borrow the money that has been contributed to the plan, without penalty, if the loan is repaid. In this case, Debtor's PSP is offered by the same employer, General Motors, as the 401(k) plan that was the subject of In re Whitaker, 2007 WL 2156397 (Bankr. N.D. Ohio 2007). The terms of loan repayment of both plans are also similar. The plan in In re Whitaker

4

provides that "[r]epayment of a loan is made through after-tax payroll deductions" and that a default in the loan agreement will result in the participant being "irrevocably deemed to have received a distribution of assets in an amount equal to the outstanding balance of the loan, plus any accrued interest, calculated to the date of the loan is deemed distributed."

Id. at 2. Almost identically, the plan in the instant case states,

> In the event an active Participant fails to make a required loan payment... then the Participant's loan will be defaulted and such Participant shall be irrevocably deemed to have received a distribution of assets in an amount equal to the remaining outstanding principal amount of and accrued interest in the loan, calculated to the date of such deemed distribution.

(Debtor's Ex. A). That language used in both plans is analogous suggests the plans can be similarly viewed for the purposes of this Court's findings.

### B. Retirement Plans and "Other Necessary Expenses"

Line 26 of the means test "Other Necessary Expenses: involuntary deductions for employment" explicitly instructs the Debtor, "do not include discretionary amounts, such as voluntary 401(k) contributions." The United States Trustee argues that contributions to a retirement plan are to be considered disposable monthly income in the present case, and loan repayments to retirement plans should receive the same treatment. This Court agrees with the Trustee's assessment in treating loan repayments the same way as contributions. This Court has previously held that "[s]ince 401(k) loan repayments also have the effect of increasing the amount of a debtor's 401(k), they should be treated the same way as voluntary contributions." In re Farkas, 11-59772, 2012 WL 3257855 (Bankr. E.D. Mich. 2012).

The Court in In re Whitaker held that the presumption of abuse arises and that the debtor's 401(k) plan loan repayments may not be deducted as involuntary deductions under the

5

means test. In re Whitaker, 2007 WL 2156397, at *5. The debtor in that case was also an employee of General Motors. Id. at *1. Debtor had obtained loans from his 401(k) retirement account and listed repayment of those loans as a mandatory payroll deduction under the means test Form B22A. Id. Such payments are not a requirement of the job and therefore not a mandatory deduction. In re Whitaker, 2007 WL 2156397, at *3 (citing In re Lenton, 358 B.R. 651 (Bankr. E.D. Pa. 2006)). The court states,

> "[r]equirement of the job" as contemplated in the Involuntary Deductions category specified in the IRM to mean a requirement imposed on anyone performing that job. As repayment of a 401(k) plan loan is not such a requirement, he is not entitled to deduct his 401(k) plan repayment expenses as a mandatory payroll deduction on line 26 of Form B22A.

In re Whitaker, 2007 WL 2156397, at *3.

The court in In re Brace, 430 B.R. 513 (Bankr. N.D. Ill. 2010) also held that a 401 (k) loan repayment is not an involuntary deduction and thus the presumption of abuse arises. In that case, the court determined that "there is no evidence that default on the 401(k) loan will result in termination of the Debtor's employment, and, thus, repayment is not a requirement of the Debtor's job. Rather, the only consequence of nonpayment is that the loan will be treated as a taxable distribution." Id. at 515. Based on this determination the Court decided that the loan repayment is a discretionary deduction for the purposes of the means test and further concluded that "[d]isallowance of this expense will increase the Debtor's disposable income and trigger the section 707(b)(2) presumption of abuse, thereby rendering the Debtor ineligible for chapter 7 relief." Id.

This Court also finds the reasoning in In re Lenton to be persuasive. 358 B.R. 651. In that case, the court held that a monthly paycheck deduction from a debtor in order to repay a

6

401(k) employee retirement plan loan was not a "necessary expense" that could be deducted from the debtor's current monthly income. The court determined that mandatory retirement contributions "implies a situation where participation in a retirement plan is a condition of the job, *i.e.*, the original contributions are a deduction that an employer would take from *all* employees. This is consistent with the [Internal Revenue] Manual, which requires that an involuntary deduction 'must be a requirement of the job.'" Id. at 657 (emphasis original). An example of this would be union dues, which one must mandatorily pay as a condition of employment. On the other hand, a 401(k) plan has been held as a voluntary deduction and not allowable under line 26. Id. The court in In re Lenton posits, "if future voluntary contributions to the 401k plan are not necessary expenses, it is hard to argue that the replenishment of past voluntary contributions to the 401k account by repaying loans is a necessary expense." Id. at 658.

The Trustee also notes that the PSPs should be considered an involuntary deduction because a default in repayment would not subject the Debtor to termination of her employment, but would merely cause the plan administrator to treat the loan as a distribution from the plan likely resulting in a tax liability to the Debtor. The court in In re Lenton addressed this point stating that, "the Monthly Loan Payment is not a condition of the Debtor's job, but rather a condition of his Loans... the participant suffers only an economic penalty for any failure to restore the voluntary contributions. Id. at 657 (quoting In re Barraza*,* 346 B.R. 724, 730–31 (Bankr. N.D. Tex. 2006). The same would be true in the instant case. The plan's terms specifically state that default in a loan repayment would not constitute grounds for termination.

7

This Court does not see, nor is it seriously argued that there exists, any material difference that should alter the result, between the 401(k) plans referred to in the foregoing cases, and the PSP involved in this case. This Court agrees with the reasoning and results in those 401(k) cases. Thus the funds being allocated toward the loan repayment are not to be considered an appropriate monthly expense in the presumption of abuse calculations which means that in this case, the presumption of abuse arises.

## II. Special Circumstances Under § 707(b)(2)(B)(i)

As noted a presumption of abuse may be rebutted under § 707(b)(2)(B)(i) by demonstrating special circumstances. As the statute states, the presumption "may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of currently monthly income for which there is no reasonable alternative." Debtor argues that in In re Lenton, the court found retirement loan repayments to qualify as a special circumstance to rebut the presumption of abuse. Noting that "the language of § 707(b)(2)(B) implies a fact-specific inquiry," the court relied on the factors provided by the court in In re Thompson that focus on the timing and purpose of the loan withdrawal as well as whether repayment through payroll deductions was mandatory. In re Lenton, 358 B.R. at 661. The In re Thompson decision, which would later be reversed, concentrated on the "no reasonable alternative" language in the statute and opined that the debtor in that case had two options to end loan repayment payroll deductions: first to quit his job, or second to repay the loans, and "[t]he first option would have been financially irresponsible, the second financially impossible." In re

8

Thompson, 350 B.R. 770 (Bankr. N.D. Ohio 2006). Applying these factors, the court in In re Lenton noted that the debtor incurred the loans more than a year before filing the bankruptcy case and that the only way he could stop the payroll deductions was to terminate his employment or pay off the loans entirely. In re Lenton, 358 B.R. 662. These facts were deemed sufficient to establish special circumstances "for which there is no reasonable alternative." Id.

This Court, however, construes the statute narrowly and relies on the interpretation offered in Eisen v. Thompson, 370 B.R. 762, 765 (N.D. Ohio 2007). The court in Eisen v. Thompson reversed the bankruptcy court in In re Thompson, holding that special circumstances "refers to circumstances which require a debtor to incur additional expenses or adjustments to his current monthly income" and thus retirement loan repayment is not a special circumstance. Id. at 773. Circumstances that led to taking out the loan may be special and warrant special circumstances to rebut the presumption. However, the court states that retirement plan loans are not special and "[w]ithout more, a situation as common as the withdrawal of one's retirement funds cannot be a 'special circumstance' within the accepted definition of this term." Id.

Debtor in this case does not allege any special circumstances of the type referred to in the statute nor does debtor argue or point out any justifications of additional expenses or adjustments of current monthly income pursuant to the statutory formals relating to such. The factors used in In re Thompson and In re Lenton are more properly ones examined under and relevant to § 707(b)(3).

9

### III. Abuse and Totality of the Circumstances Under § 707(b)(3)

The United States Trustee asserts alternatively that if the presumption of abuse does not arise or is rebutted by a showing of special circumstances, the Court may look to the totality of the circumstances to determine if the Chapter 7 case should still be dismissed. <u>See In re Bender</u>, 373 B.R. 25 (Bankr. E.D. Mich. 2007). Given the Court's indicated conclusions on the discussed issues, an inquiry into the totality of the circumstances is not necessary.

### Conclusion

Pursuant to 11 U.S.C. § 707(b)(2) the presumption of abuse arises and the case should be dismissed or converted. The Trustee shall present an appropriate order.

.

**Signed on April 11, 2013**

                                          /s/ Walter Shapero
                               **Walter Shapero**
                               **United States Bankruptcy Judge**